The final case on our docket today is number 128-260, Midwest Commercial Funding v. Robert Sylvester Kelly, et al., number 16 on our agenda. Counsel for Appellant, are you prepared to proceed? Good morning. May it please the Court, Josh Vinson on behalf of the Plaintiff Appellant, Midwest Commercial Funding. This is a dispute between two judgment creditors over lien priority with respect to judgments that they possess against the defendant and judgment debtor, Robert Kelly. There's three issues of civil procedure presented in this case. One is a question related to the last case you had, forfeiture, of the adverse claimant, Heather Williams, objection or challenge to the manner of service of Midwest's citation to discover assets on Sony because she waited until a motion to reconsider to assert that challenge. The second issue is whether claimant Williams has standing to even challenge the method and manner of service on a party who voluntarily appeared and subjected themselves, Sony Music, to the court's jurisdiction. And the third is whether Supreme Court Rule 12 or Supreme Court Rule 105 governs the service of a citation to discover assets in a supplementary proceeding under Section 1402. The threshold question, of course, is the forfeiture issue. When you look at the adverse claim that Heather Williams filed in this action, you can see that the arguments made were limited entirely to what she contended were the equities of the case. She obtained her judgment first. She filed her citation to discover assets with the circuit court first. She mailed it before Midwest emailed its citation to discover assets to Sony, but never raised any question at all in that argument, including at the hearing on the motion for a turnover order, as to whether the method and manner of service to which Sony agreed to appear in response to Midwest's citation was a problem. Never raised it. And at the end of the hearing on the motion for a Midwest turnover order, the court granted that relief, found the only issue that the parties had disputed was whether our email citation was first in time versus Ms. Williams' registered mail citation, which was received several days later, determined that ours had priority. And it was only after the court made that determination based on the party submissions and after hearing that Williams first raised the question of challenging Sony Music's decision to voluntarily appear in the case in response to the emailed citation. You know, the forfeiture doctrine sometimes seems to get a little, you know, squishy, I think, in the appellate court. You know, this court's enforced it, you know, pretty carefully. And I think particularly in this instance, it was inappropriate for the appellate court to give such scant, you know, they disposed of it in one paragraph, really, such scant treatment to the forfeiture issue, because it really wasn't just a pure question of law that the parties had briefed and therefore the court was, you know, was okay to go ahead and decide. You know, when you look at the trial judge's decision on the motion to reconsider, he was very specific about the fact that there was prejudice by the delay in raising this argument until the motion to reconsider. And that's because Sony Music wasn't there anymore. If you were going to explore the circumstances any further as to Sony's receipt of the emailed citation to discover assets, and if you were going to explore any further Sony's decision to voluntarily appear and answer this Midwest citation in response to the emailed citation, that opportunity was gone. And from a standpoint of, you know, respecting the trial court's discretionary ruling on the motion to reconsider, where the exercise of that discretion has been based on prejudice to the court's ability to examine underlying facts or explore facts that are now being raised for the first time in the motion to reconsider, if there's ever a point in time where forfeiture would apply, you would think that would be it. Aren't these facts undisputed, though? Well, I think in many respects the facts are undisputed, yes. You know, in terms of the fact that our citation was emailed on August 19th, was received, and that's why Sony appeared and answered, I agree that those facts are undisputed. When you say many facts are, what are the facts? Well, one of the things that, you know, the appellate court relied on was that there, and that Williams argues, is that there needed to be some clarification as to whether when Sony responded to the citation, was it doing so because of the one it had received by email, or was it the one that had been sent by U.S. mail by Midwest? And that was really the linchpin of part of what the appellate court relied upon there, and that's, you know, again, that's completely unfair because the opportunity… And if the person voluntarily accepts the circuit court's jurisdiction over him, is it in the manner in which he was served still relevant or irrelevant? Really, I think it's irrelevant at that point, which takes me really to the second issue in this case, which is the standing question, whether Williams even had standing to raise this issue, because you have two cases that this court has decided that I think are basically on point. In the In Re M.W. case, you had a minor who was going through a juvenile delinquency adjudication, and she tried to invalidate her adjudication of delinquency, just as Williams is trying to invalidate the priority of our citation, based on the fact that her father was not properly served in the delinquency proceeding. And this court said, doesn't matter, the father voluntarily appeared, and therefore, whether he was properly served or not doesn't make any difference anymore. And so, you know, on that very basis, you know, same thing. The court said, no, it doesn't matter, the parties can agree, parties can voluntarily appear, and in this case, Sony voluntarily appeared in response to the emailed citation. Isn't there some evidence in the record that Midwest knew of Sony's email address and to whom to direct an email? Yes. Because of prior dealings. That's correct. However, that that information is not public, that rather only Midwest, because of their prior contact with Sony, would be able to do this. Doesn't this feel like gamesmanship? No, I don't think so, because the power to object to the manner of service still rests entirely with Sony. I mean, Sony, if it was in there, you know, presumably Sony acts according to its litigation interests. And, you know, they could be anything, for all we know. I mean, in some instances, someone who holds assets of a judgment debtor may be reluctant to give up those assets, may have reasons to protect the judgment debtor's interests. So I think that the motivation or the concerns of Sony in those particular instances, they have the absolute power to make the objection or not. So promoting collusion between a judgment debtor and a judgment creditor to the preclusion of another judgment debtor is actually improper. No, I don't think that that's promoting collusion at all. You know, I mean, we have a statute for that. I mean, if there is collusion, then you have the Uniform Fraudulent Transfers Act. I mean, if somebody is making a preference, then that's the remedy. I mean, a remedy does exist for that. But when it comes to someone's decision, fundamental right, due process right, to submit themselves to the jurisdiction of a court and to choose not to waive service or to choose to waive service of process or not to, that's entirely their fundamental right. I don't see that as collusion at all. You know, I think this helps facilitate litigation. When did Sony waive service of process? What date? August 19th is the effective date on which the citation to discover assets was transmitted. Based upon their prior dealings? No. Because Sony wasn't a party at that point in time, correct? Correct. These citation proceedings. Correct. So you're bringing them into the case. That's correct. Through this citation. That's correct. Okay, so you bring them in through an e-mail sent to them and through an agreement with Sony. Just as any other party in a contract can agree to waive service of process or to agree to a different method and manner of service, that's no different whatsoever. Don't they agree to it under, was it Rule 12b-3, by a written acknowledgment? And they did acknowledge. They did. On August 24th. That's correct. They did. I guess the same day when service was perfected by waives. That's correct. But that's the acknowledgment. That's not the effective date of service. The effective date of service under Rule 12 is when it's transmitted. And the fact that they made no objection whatsoever to the transmission of the citation via e-mail makes it effective. I mean, those are different things. The acknowledgment is one thing. That's like filing a proof of service. But the actual effective date of when the citation was transmitted is Rule 12. It's effective when transmitted. So that's why that takes priority in this particular case. And there's a number of problems that you run into in a circumstance like this where you let a third party raise an objection to the method or manner of service where a party has voluntarily appeared. One is you destroy the finality of judgments. I mean, that means that any time a defendant has voluntarily appeared and answered a complaint and the plaintiff recovers a judgment on that basis, some other party could come in months, years later, and contend that the method and manner of service was improper, and then the judgment is void. We all know that a judgment obtained without personal jurisdiction is void. So you're totally upsetting the finality of judgments. Once you voluntarily appear and file an answer, it's moot. I mean, you're there and you submit to the jurisdiction of the court. That's right. But what my point is here is that in this case the appellate court is allowing Williams to come in after the fact and challenge the method and manner of service to which Sony agreed to voluntarily appear exactly like that. And that's why I say it upsets the finality of the judgment. I mean, there's a number of other problems. May I ask you this? Sure. Specifically the type of cause of action that we're looking at, rather than just generally in terms of service. I'm sorry, the type of? The cause of action that we're looking at. Yes. So are you ñ is this correct that the lien priority is determined by the order of filing? So it's a race to the courthouse. Not the order of filing, but the timing of service. The timing of service. Service of the citation. That determines lien priority. So here, unlike, let's say, another case, a contract case, where there's an issue of service and then the issue's going to be whether there's personal jurisdiction moving forward on the cause of action, whatever it's going to be, tort, or whatever it's going to be. Here, there's something more going on. There's the actual priority of liens being determined by this service. Yes. Okay. And so I go back to my question of the way that you phrase this, then, doesn't Midwest and Sony, who have a relationship, aren't they, by using this e-mail process, aren't they determining lien priority between themselves? But I think that that's no different in any time a party enters into an agreement with another party and agrees on a method and manner of service. And excludes someone else. Well, I don't know that that's necessarily excluding someone else. I mean, you have to keep in mind, Williams obtained her judgment in March and had, I mean, waited six months to issue the service. She is excluded. Her lien is now secondary behind Midwest. She gets paid just second. Because of the manner of service. Correct. Because they had a relationship in the past. They had information, the e-mail address, the person to whom it should be directed. Therefore, Midwest has a benefit that precedes the individual. But that's only by virtue of the fact that Sony has made its own decision, just as any other, just as the father in In re M.W., or the state's attorney in the People v. Matthews case, all decided that they didn't care about the fact as to how or whether they were served. They were perfectly willing to appear voluntarily in the case. Counsel? Yes. Ultimately, a company has the decision and the right to make the decision about when they're going to accept service and how they're going to go forward on that. So if we were to determine that some third party, who really has no business in the decision a company has to make in accepting service, can now come in, I mean, that seems that that would really upset the apple cart. It certainly would. It would assert the company's authority how they're going to handle matters that they have to deal with. Absolutely right. And I think that that speaks right to the language from the People v. Matthews decision, where the court said that allowing that to happen would be effectively revoking the right to waive service of process. And like I said, the ability to waive service of process under certain circumstances is of great benefit to the judicial system. I mean, there are a lot of, as I said, jurisprudential concerns that come into play here in terms of the finality of judgments, the ability for someone to come in as a third party months or years later and upset a judgment that was entered because a party chose to voluntarily waive service. I mean, that's exactly the point that the two prior decisions by this court in Ray M.W. and People v. Matthews speak to, is protecting that interest. What are the prohibitions in Illinois law of a party, one party preferring another party over another? The only one that I can think of offhand, Justice Carter, is the Uniform Fraudulent Transfers Act, where, you know, if someone has evidence that there was collusion and a preference given, then you can bring a claim under UFTA. That's what everybody calls it. They're all to that statute that have to be proven. That's correct. You know, among them, some of the points that I think Chief Justice Tice was raising, that there was some collusion, some unfairness, some priority given for unfair and improper reasons, disregarding other people's interests. I don't know the elements offhand of a uniform fraudulent transfer. Otherwise, preference isn't per se. Giving a preference to one party over another party isn't per se a violation of anything. No. I don't think it is at all. I think parties can do that, and I think that's something, to a certain extent, that the courts should encourage. You know, if you're going to streamline litigation, reduce delay, reduce expense, you know, there's a great benefit when circumstances arise where parties opt to waive service and voluntarily appear and submit themselves to the person jurisdiction of the court. And again, if something untoward happened, there's a statute, there's a remedy. That's right. That can be pursued. That's exactly right. But that has to be proven. That's exactly right. That's exactly right. Rather than, you know, step on the, you know, fundamental constitutional right of due process to agree to a method and manner of service and voluntarily submit yourself, choose to waive service and submit yourself to the jurisdiction of the court. I mean, what I'm wondering, in absence of pursuing this statutory claim, what grounds do courts have of preventing a party from doing what was happening in this case? Well, I think that's really, first of all, the premise, I don't think that courts should prevent parties who wish to voluntarily appear and submit themselves to the jurisdiction of the court is something a court should prevent. I mean, that's the other sort of peculiar thing about this circumstance. How do you really litigate someone's decision to voluntarily appear? I mean, you serve me with papers, and I come in and appear in court, and I say, forget it, I don't, you know, I don't care that the service was to my 5-year-old child. I waived that. I'm going to personally appear. So now we're going to have to litigate my decision on that issue. What is the burden? They didn't come into court until after August 24th, though, right? Correct. I think the first time that was up was September 1st. So where is the evidence that Sony agreed to email service? Well, there's really three answers to that question. One is, when you look there, the email exchanges between Midwest, Midwest Council and Sony, you read the context of that, you can see very clearly in the August 24th email responses from Sony, they're referring to their receipt of the attached, not enclosed, the attached citation, and their agreement to appear, will appear in answer, tell us the date, give us the Zoom information, should we compare it to hearing. That's number one. But again, let's focus on why August 24th shouldn't be the date of service as opposed to August 19th. Because under Rule 12, it's the date of transmission. As I said before, that's the acknowledgment that they got it, but we know it was emailed on August 19th, and that's the date of transmission. Rule 12 says it's transmitted and effective on the date of transmission. So that's number one. Number two, the other reason why this problem is the forfeiture issue. This was raised late. But third, there's a fouch problem here, okay, that goes to your question. Because there was a hearing. I mean, the trial judge had a hearing on these issues, and there's no transcript. I mean, Williams appealed the decision on the turnover order and the denial of her motion to reconsider and never included a transcript of proceedings or a bystander's report on what transpired at that hearing where Sony was present and the issue of your question, you know, when did we get it, why did we appear, did we volunteer, those questions could have been asked, may have been asked, for all we know. What we do know is when you look at the trial judge's decision, he's focused exactly on this point, that everybody agrees Sony got it on August 19th. Is that take precedence over the registered mail return receipt requested that was sent by Williams and received on August 24th? That was what the dispute was at the hearing that we have no transcript on, that the plaintiff or, I'm sorry, that the claimant never included in the record on appeal in the appellate court. So from the standpoint of fouch, you have to presume that what happened at that hearing supported the trial judge's decision that it went down exactly as described, that it was transmitted on the 19th, received on the 19th, and that was effective, and that is the reason Sony voluntarily appeared and answered the citation. All of those things, there has to be a presumption that those supported the trial judge's decision in this case. And that, I think, fits with the trial judge's decision later to deny the motion to reconsider. You know, that's when you get into this forfeiture question. Why wasn't this raised until after Williams lost? Okay? If this had been raised sooner, we could have explored it at the hearing, is really, I think, what the judge said. And I think the appellate court should have respected the trial judge's discretion on that particular issue, and that is a discretionary call. Running out of time, the last thing I wanted to talk about is which rule governs. No matter what the court does in this case, I think it has to correct a rather obvious error by the appellate court on which rule governs the service of a citation to discover assets. The appellate court said Rule 12 governs. That is incorrect. Section 1402 of the Code of Civil Procedures says that service of process will be according to the rules. Rule 277 is what governs service of citations on nonparties, as in this case. And Mr. Vincent, you may bring your remarks to a close. Okay. Thank you. We would ask that you reverse the appellate court's decision and affirm the trial court's decision on the turnover order. Thank you. Good morning. Honorable Justices, Counsel, may it please the Court, my name is Jeff Deutschman, and I represent Heather Williams, the adverse claimant, in the Midwest Commercial Funding case, a case that we were not a part of. As the Court understands well, Heather Williams got sent out a certified mailing two days before Midwest Commercial Funding made any attempt to obtain service on Sony Music. On October, excuse me, on August 17th, we sent a certified letter to Sony Music. Two days later, Midwest Commercial Funding sent a letter with a citation. They also sent an email because of their prior dealings. And I believe that the email was sent as a courtesy. But they sent a mailing. And why did they send a mailing if they believed that email was a proper and sufficient means of service? It's not, and they didn't think that. Otherwise, they wouldn't have sent a mailing. We believe the appellate court got it right. The underlying court's decision was reversed, finding that email service was improper, that service of a citation is like service of a summons. I can't file a lawsuit against someone and just send it to their email address. Due process, justice require way more than that. And the fact of the matter is that's what we did. We followed that in sending a certified letter. Under Supreme Court Rule 105, we followed the law. But, counsel, you're talking about what the person being served is entitled to. And, of course, here Sony submitted to the email service. So where does that leave us? There is no evidence that they submitted to the email service. On the 24th, they sent notification that they received the email, but they also received the mail by then. And they certainly received the certified mail, which takes longer than the mail, on the 24th. So the fact of the matter is it's not up to Sony whether or not and when they receive service and whether they're accepting service. The fact of the matter is we're not challenging the service in the first place. We're challenging the ability to of the priority of the service, the priority of the service. And for those reasons, we don't believe there's gamesmanship, which is why we didn't forfeit anything. And the appellate court saw we didn't forfeit anything because they sent mail. They sent a mailing, and all the arguments were about the mailing. Counsel didn't discuss the mailing, but they used the U.S. mail in attempt to get service on Sony. They also sent the courtesy email. But there's nothing in the law that says you can serve this kind of a citation by email. And moreover, there is nothing in the record that allows or shows that Sony accepted that service by email or waived service by allowing email. Could you address the record problem, the forfeiture problem, the voucher problem? What was the hearing all about in the trial court originally? And then what was the motion to reconsider all about, since we don't have a record of that? The motion to reconsider was brought by my office based on the fact that we believe that Heather Williams didn't get an opportunity to argue the issue on the mailing. They've always ignored the mailing by the U.S. commercial firm. But it was still the mailing versus the email. That's correct. And it was only in – And your position was she wasn't given an opportunity to raise that issue during the original hearing. What happened in the original hearing? The original hearing didn't really discuss – they said they emailed it, but their focus wasn't on that. And it wasn't – Did you raise that issue? I did not. We talked about just the mailing and that we were first in time because we served ours on the 17th, and they served theirs on the 19th. So there was no discussion of the email and the acceptance of the emails that took place during the original hearing? That's correct. That's my recollection. And the fact of the matter is counsel said that it was improper for us to have not made more of a record. The fact of the matter is the Midwest commercial funding was not my case. It wasn't up to me to do anything with respect to that case. I filed an adverse claim in that case as Midwest commercial funding filed an adverse claim in my case, Williams v. R. Kelly, where we have a separate judgment. And the reason we waited so long, just so the court understands, is we got our judgment on March 10th, seven days before the shutdown of the court system in this state. And the fact of the matter is it would have been unreasonable for me to have rushed into court 30 days later and filed documents when there really wasn't a process in place yet as to what was going on in the court system in late March, April, and May. And the fact of the matter is things didn't get up and going, especially in Cook County, until much later. And therefore, we waited as a courtesy and under reasonableness before moving forward on the collection matter. But we don't think that the forfeiture is a good argument. We made every effort. We maintain that the mail by Midwest commercial funding was a mere courtesy, and for that reason we did everything that was necessary. Can you address the standing issue? On the standing issue, the appellate court correctly pointed out that this is handled on a case-by-case basis. And many of the cases that counsel cites, like the appellate court, our argument is that those cases are distinguishable. They don't involve third-party citations. In this case, my client does have standing because she's asserting an interest in the controversy. When the judge in the underlying case ordered both parties to file adverse claims in each other's cases, that conferred standing. But more so, we're not contesting, we're not challenging service, as I've said, as much as we're challenging the priority of the service based on the proper service of a citation. So the fact of the matter is we were conferred standing by the court. The fact of the matter is it's not the party that has the right to make that challenge. And the appearance of collusion, as you questioned earlier, can come up in those situations. The appellate court recognized that, and that's why they dispatched with the standing argument. For all these reasons, and if the court doesn't have any other questions, we respectfully ask that you affirm the first district appellate court decision. Thank you very much. Thank you very much. Have a good day. I realize I'm the only thing standing between the court and lunch right now. I just have a couple of very brief points to make. One is Rule 105 makes it clear that with respect to service, it can be by any manner provided by law. And one of the manners provided by law is agreement of the parties. That's the national equipment case. There are many, many cases throughout the Illinois jurisprudence that have held that very point. I disagree with counsel's argument that there was a good reason for Williams to wait to issue the citation. They got their judgment in March. They waited six months. I mean, if they wanted to quickly attach the proceeds of the royalty payments to Mr. Kelly, they didn't have to wait. The pandemic did not prevent people from filing citations to discover assets. I don't think that there is any meaningful way to distinguish the Ingram W. and people versus Matthews cases. I mean, the common denominator in all of those cases is the court held. You don't have standing to challenge a method and manners where somebody comes in and appears voluntarily. Once that's happened, the court's jurisdiction is attached. And that's a good rule. And finally, I think that counsel kind of confuses what the interests are here for purposes of standing. She did have an interest and a right to litigate the question of lien priority. That's certainly her due process right. But what she didn't have the right to litigate was Sony's due process right to agree to submit to the personal jurisdiction of the court on the basis of an e-mail citation. That was their decision. And she doesn't have the right to litigate Sony's due process right on that issue. So unless the court has questions, we would ask that you reverse the appellate court and reinstate the trial court's decision. Thank you. Thank you very much. I'd like to acknowledge that we have a former clerk in the room, former clerk of the Supreme Court. We'll be there in one moment. Let's take number 128-260, Midwest Commercial Funding versus Robert Sylvester Kelly. That is agenda number 16. That case will be taken under advisement. Counsels, you are excused.